**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE STEVENSON, | ) | Case No. 1:25-cv-1658 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| S. USA LIFE INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff George Stevenson is the named beneficiary of a life insurance policy that Defendant S. USA Life Insurance Company, Inc. issued. When the policyholder died in a car accident, S. USA denied the claim and rescinded the policy, claiming that the policyholder made material misrepresentations during the application process. In response, Plaintiff filed suit, seeking a declaratory judgment regarding his entitlement to the insurance proceeds. Plaintiff and Defendant filed cross-motions for judgement on the pleadings. For the following reasons, the Court **GRANTS IN PART** Plaintiff's motion for judgment on the pleadings and **DENIES** Defendant's motion for judgment on the pleadings.

## STATEMENT OF FACTS

For the purpose of resolving the cross-motions for judgment on the pleadings, the parties agreed to stipulated exhibits. (*See* ECF No. 14, PageID #134.) These documents consist of (1) the underlying application (ECF No. 14-1), (2) policy

documents (ECF No. 14-2), and (3) the same denial letter that Plaintiff attached as an exhibit to the complaint (ECF No. 14-3; *see* ECF No. 1, PageID #9–10). "In addition to the pleadings, courts may consider any documents referenced in the complaint that are central to the dispute." *Estate of Q.W. v. Lucas Cnty. Child. Servs.*, 682 F. Supp. 3d 671, 680 (N.D. Ohio 2023) (citing *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022)). Because these documents are integral to the allegations of the complaint, the Court considers them without converting the motions into ones for summary judgment.

Taking the facts alleged in the complaint as true where the stipulated exhibits do not contradict them, as the Court must in the current procedural posture, the complaint alleges, and the stipulated exhibits support, the following facts.

Mr. Stevenson is the named beneficiary under a life insurance policy (Policy No. S920573777) that S. USA issued on the life of Robert Murowsky. (ECF No. 1, ¶ 1, PageID #6.) The policy was issued in the face amount of $250,000. (*Id.*, ¶ 2, PageID #6.) Murowsky died, and Mr. Steveson filed a claim for the proceeds of the policy. (*Id.*, ¶ 3, PageID #6.)

Upon review of Mr. Stevenson's claim, S. USA represented that "[t]he records we have received show that significant medical information was not revealed at the time of the application," including a 25-year smoking history of smoking one pack per day. (ECF No. 14-3, PageID #216; ECF No. 1, PageID #9.) Later in the letter, S. USA represented that this history predated the application for the insurance policy and was not disclosed in the application or the telephone interview, that the application

and interview questions "which would have shown this history were answered in the negative," and that had this history been indicated, "no coverage would have been issued" to Murowsky. (*Id.*) As a result, according to the letter, S. USA denied the claim and rescinded the policy. (*Id.*; *see also* ECF No. 1, ¶ 4, PageID #6.) S. USA enclosed a check for $1,372.45, which included a full refund of the premium plus 1% contractual interest on the premium from the date of the policy. (ECF No. 14-3, PageID #216; ECF No. 1, PageID #9; *see also* ECF No. 1, ¶ 5, PageID #6.)

The application asks the following question: "In the past 36 months, has the Proposed Insured used tobacco or nicotine products in any form (including but not limited to cigarettes, e-cigarettes, vaping, cigars, pipe tobacco, chewing tobacco and snuff)?" (ECF No. 14-1, PageID #138.) Morowsky responded "no" to this question. (*Id.*)

**STATEMENT OF THE CASE**

Plaintiff sued S. USA in State court for declaratory relief seeking to determine whether the insurance policy is valid and enforceable, whether Defendant is obligated to pay the proceeds of the policy to Mr. Stevenson, and whether Mr. Murowsky made any material misrepresentations during the application process. (ECF No. 1, ¶ 9, PageID #7.) Defendant timely removed this action to federal court. (ECF No. 1.) Plaintiff moved to remand (ECF No. 5), which the Court denied (ECF No. 8).

After a case management conference, the parties agreed to file cross-motions for judgment on the pleadings on, as the parties described it, the core legal issue in the case. (*See* Minutes, Dec. 3, 2025.) The parties stipulated to three documents as

authentic, true, and accurate for the limited purpose of briefing and the Court's consideration of the cross-motions for judgment on the pleadings. (ECF No. 14, PageID #134.) Plaintiff and Defendant filed simultaneous cross-motions for judgment on the pleadings. (ECF No. 15; ECF No. 16.) Then, Plaintiff and Defendant filed simultaneous responses. (ECF No. 17; ECF No. 18.)

## GOVERNING LEGAL STANDARD

"The only difference between Rule 12(c) and Rule 12(b)(6)" is timing. *Hunter v. Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003). Rule 12(c) provides that, once "the pleadings are closed" a party may "move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)); *see also Holland v. FCA US LLC*, 656 F. App'x 232, 236 (6th Cir. 2016). On a motion under Rule 12(c), courts "must follow the Supreme Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)). "In other words, judgment on the pleadings is appropriate where, construing the material allegations of the pleadings and all reasonable inferences in the light most favorable to the non-moving party, the Court concludes that the moving party is entitled to judgment as a matter of law." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021). In construing the pleadings, the Court accepts the factual allegations

of the non-movant as true, but not unwarranted inferences or legal conclusions. *Holland*, 656 F. App'x at 236–37 (citing *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)).

While "the court's decision rests primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F. Supp. 3d 599, 602 (N.D. Ohio 2017) (citation modified). Only "well-pleaded factual allegations" that "plausibly give rise to an entitlement of relief" and "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive. *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]" *Engler*, 862 F.3d at 575. Nor are facts that are "merely consistent with" liability. *Bates*, 958 F.3d at 480 (quotation omitted).

**ANALYSIS**

Plaintiff argues that the policy was merely voidable, not void *ab initio*. (ECF No. 15, PageID #220–31.) He contends that Ohio law does not permit S. USA to rescind the policy *ab initio* for a misstatement. (*Id.*) Defendant counters that Mr. Murowsky's misstatement coupled with the application's warning render the policy void *ab initio*. (ECF No. 16-1, PageID #240.) In the alternative, Defendant argues that Ohio law permits an insurer to rescind a life insurance policy "when an applicant makes a willful and material misrepresentation that induces issuance of the policy." (ECF No. 16-1, PageID #238.)

## I. *Boggs* Analysis

Under Ohio law, "[s]tatements by an insured fall into two classes:" warranties and representations. *Allstate Ins. Co. v. Boggs*, 27 Ohio St. 2d 216, 218, 271 N.E.2d 855, 858 (1971). "The consequences" of an insured's misstatement of fact "are entirely different, depending on whether the statement is a warranty or a representation." *Id*. If the misstatement constitutes a warranty, it "voids the policy *ab initio." Id.* If the misstatement constitutes a representation, and "if it is fraudulently made and the fact is material to the risk," it "will render the policy voidable," but "it does not void the policy *ab initio*." *Id.* However, an insurer may not use that representation "to avoid liability" after liability has arisen under the policy. *Id*. at paragraph one of the syllabus; *see also id.* at 221; *Goodman v. Medmarc Ins.*, 2012-Ohio-4061, 977 N.E.2d 128, ¶ 23 (Ohio Ct. App.).

"All of these rules operate against the broader principle that because 'policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured.'" *Certain Underwriters at Lloyd's of London Subscribing to Pol'y No. HMPL 18-0164 & HMPL 17-0158 v. KG Admin. Servs., Inc.*, No. 20-3063, 2021 WL 1943369, at *266 (6th Cir. May 14, 2021) (quoting *Medical Protective Co. v. Fragatos*, 190 Ohio App. 3d 114, 121, 2010-Ohio-4487, 940 N.E.2d 1011, ¶ 27). Accordingly, "courts do not favor warranties," and "a statement as to conditions does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation." *Id.*

*Boggs* established a two-prong test to determine under Ohio law whether the insured's misstatement is a warranty and, ultimately, voids the policy *ab initio*. *Goodman*, 2012-Ohio-4061, ¶ 17. "Typically, Ohio courts apply [this] two-prong[] approach to distinguish warranties and representations." *Certain Underwriters at Lloyd's of London*, 2021 WL 1943369 at *265. Under the first prong, the misstatement "must plainly appear on the policy or must be plainly incorporated into the policy." *American Fam. Ins. Co. v. Johnson*, 2010-Ohio-1855, ¶ 16 (Ohio Ct. App.); *see also Goodman*, 2012-Ohio-4061, ¶ 17. Under the second prong, "the policy must plainly warn" that a misstatement "renders the policy void from its inception." *Goodman* at ¶ 17. The Ohio Supreme Court explained that "an insurer is bound by the provisions which he chooses to incorporate in his policy," and, "[i]f it is his purpose to provide that a misstatement by the insured shall render the policy void *ab initio*, such facts must appear clearly and unambiguously from the terms of the policy." *Boggs*, 27 Ohio St. 2d at 219.

Without citing any authority, Defendant argues that the *Boggs* analysis is restricted to the automobile insurance context. (ECF No. 16-1, PageID #240.) Plaintiff responds with a catalog of cases where Ohio and federal courts applied *Boggs* to a variety of insurance claims, including claims about life insurance. (ECF No. 17, PageID #244–45.) As relevant here, federal courts applying Ohio law agree that *Boggs* applies to life insurance. *See Certain Underwriters at Lloyd's of London*, 2021 WL 1943369, at *266 (affirming the district court's use of *Boggs* in a group life insurance policy); *O'Donnell v. Financial American Life Ins. Co.,* 328. F.R.D 174, 182

(S.D. Ohio 2017) (applying *Boggs* to a life insurance policy). Accordingly, the *Boggs* test applies to life insurance policies, and the Court analyzes both prongs of the test to determine if the misstatement was incorporated into the policy and if the policy sufficiently warned that a misstatement constitutes a warranty.

**I.A. Incorporation of the Misstatement into the Policy**

For purposes of this motion only, Plaintiff concedes that "[Mr.] Murowsky gave the disputed answer" and that "the disputed answer is incorrect." (ECF No. 15, PageID #220.) The relevant question and answer appear in the application. (*See* ECF No. 14-1, PageID #138.) Plaintiff concedes that the application was incorporated into the policy. (ECF No. 15, PageID #218.)

The Court agrees. "[T]o have an incorporation by reference in an insurance policy, it must be done in unequivocal language on the face of the policy." *Boggs*, 27 Ohio St. 2d at 220. Here, the policy provides that "[t]his Policy, which includes the attached Application and any attached Riders, amendments and endorsements, is the entire Policy." (ECF No. 14-2, PageID #179). This provision unequivocally incorporates the application into the policy, satisfying the first prong of *Boggs*.

**I.B. Clear and Unambiguous Warning**

Plaintiff argues that the policy language does not plainly warn that a misstatement would void the policy *ab initio*. (ECF No. 15, PageID #219.) Defendant argues that the application's warning is sufficient to satisfy the second prong of *Boggs*. (ECF No. 18, PageID #259.)

Here, the policy documents state that "[a]ll statements by, or by the authority of, the applicant in the [a]pplication shall, in the absence of fraud, be deemed

representations and not warranties." (ECF No. 14-2, PageID #179.) Accordingly, in the absence of fraud, any misstatement by Murowsky constitutes a representation, which does not automatically void the policy *ab initio*. For a misstatement to render the policy void *ab initio*, Ohio law requires the policy to warn of such a consequence clearly and unequivocally.

Mr. Murowsky's application warns: "**Caution: If the answers on this application are incorrect or untrue, the Company has the right to deny benefits or rescind the policy**." (ECF No. 14-1, PageID #141). Defendant argues that this "is the exact language Ohio courts require." (ECF No. 16-1, PageID #240.) In support, Defendant cites *Nationwide Mutual Fire Insurance Co. v. Pusser*, 160 Ohio St. 3d 203, 2020-Ohio-2778, 155 N.E.3d 839, and characterizes the Ohio Supreme Court's analysis there as "upholding rescission where [the] policy warned of consequences for misrepresentation[.]" (ECF No. 16-1, PageID #240.) But Defendant overlooks the specific language of the warning in *Pusser*. There, the policy plainly incorporated the application into the policy and stated that the disputed answer in that case constituted a warranty, which "if incorrect, could void the policy from the beginning." *Pusser*, 2020-Ohio-2778, ¶¶ 4 & 10. The policy stated that, "[i]f it is determined that any warranty made by the policyholder is incorrect, this policy may be held void ab initio." *Id.* at ¶ 4. Although the policy used the "nonmandatory" word "could" as opposed to "shall," when saying that the warranty at issue "could" void the policy, the supreme court determined "that [the insurer] could void the policy is patent . . . because the insured is sufficiently forewarned that a breach of warranty

can lead to a void policy." *Id.* at ¶ 12. In doing so, the court recognized that the language in the policy "that the policy could be rendered void ab initio if the insured's warranty proved to be untrue" was a "sufficient warning." *Id.*

The second prong of the *Boggs* analysis requires that the terms of the policy "clearly and unambiguously" "provide that a misstatement by the insured shall render the policy void *ab initio*." *Boggs,* 27 Ohio St.2d at 219. Even conditional language that the policy could be void *ab initio* suffices. *See Pusser*, 2020-Ohio 2778, at ¶ 12. Defendant does not direct the Court to any part of the policy with the term void *ab initio*, void at inception, void at the beginning, or any similar language that sufficiently warns the insured that a misrepresentation voids the policy from the beginning. After providing for a voidable representation, the policy warns that an incorrect answer on the application means "the Company has the right to deny benefits or rescind the policy." (ECF No. 14-1, PageID #141.) In legal parlance, "rescind" means "abrogate or cancel (a contract) unilaterally or by agreement." Black's Law Dictionary, *Rescind (*12th ed. 2024). It can also mean "to make void; to repeal or annul." *Id.* This latter meaning carries the connotation of an action taken after the fact, such as repealing a law. In formal contract terms, that meaning would make the policy *voidable*, not void *ab initio*. There is no reason on the face of the policy or application to believe an insured (or applicant) would know from the language used, including the use of the word "rescind," that the contract is void from the beginning. Nor does Defendant point to any authority where an Ohio court upheld such language for an insurer to void a contract to avoid liability. Indeed, an

insurer may not use a representation "to avoid liability" after liability has arisen under the policy. *Boggs*, 27 Ohio St. 2d at paragraph one of the syllabus; *see also id.* at 221; *Goodman*, 2012-Ohio-4061, ¶ 23. After all, the insurer controls the language of the policy, which is strictly construed against it.

Put simply, the policy warns that a misrepresentation makes the policy voidable, but it does not provide a clear and unambiguous warning that a misrepresentation voids the policy *ab initio*. Accordingly, the second prong of *Boggs* is not satisfied.

## II. Ohio Rev. Code § 3911.06

In the alternative, Defendant argues that Section 3911.06 of the Ohio Revised Code permits an insurer to rescind a life insurance policy "when an applicant makes a willful and material misrepresentation that induces issuance of the policy." (ECF No. 16-1, PageID #238.) In response, Plaintiff argues that application of the statute turns on questions of fact, which the Court may not resolve on a Rule 12(c) motion. (ECF No. 17, PageID #250.) Specifically, Plaintiff argues that Murowsky was 56 years old when he died and that the medical records reflect a 25-year smoking history but do not specify when that history occurred during his life. (*Id.*) Plaintiff points to the application question at issue, which asks *"[i]n the past 36 months*, has the Proposed Insured used tobacco or nicotine products in any form (including but not limited to cigarettes, e-cigarettes, vaping, cigars, pipe tobacco, chewing tobacco and snuff)?" (ECF No. 14-1, PageID #138 (emphasis added).) On the face of the application, then, Morowsky might have answered the question accurately.

Titled "False Answer," Section 3911.06 provides:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

Ohio Rev. Code § 3911.06. The statute requires a showing that the misstatement is "willfully false" and was "fraudulently made," "material," and induced the insurer to issue the policy. *Id.*

In his motion, "[f]or purposes of this motion only," Plaintiff concedes that Mr. Murowsky "gave the disputed answer" and "signed the application" and that "the disputed answer is incorrect" and "was material." (ECF No. 15, PageID #220.) Plaintiff made these concessions for purposes of arguing whether *Boggs* applies, not knowing Defendant would make an argument under this statute. In response to this argument, Plaintiff emphasizes that "[a]ny assumptions made by Plaintiff for purposes of its own Rule 12(c) motion were made *arguendo* and do not constitute admissions of fact for purposes of Defendant's cross-motion." (ECF No. 17, PageID #251.) Maybe.

Whatever the case, even if the Court considers these admissions for purposes of both Rule 12(c) motions, there are still questions of fact regarding, at least, willfulness and fraud, and possibly others too. Giving an incorrect answer is not the same as giving a willfully false answer. Nor is it the same as fraudulently answering. Accordingly, the Court cannot determine whether the statute allows S. USA to use the statement at issue to avoid paying on the policy.

## CONCLUSION

In his motion for judgment on the pleadings, Plaintiff seeks a judgment that "there was coverage on the day of Murowsky's death." (ECF No. 15, PageID #231.) Because of the possible application of Section 3911.06, the Court cannot go that far. As a matter of law, however, *Boggs* does not apply on the record presented. Accordingly, the Court **GRANTS IN PART** Plaintiff's motion for judgment on the pleadings (ECF No. 15) and **DENIES** Defendant's motion for judgment on the pleadings (ECF No. 16).

**SO ORDERED.**

Dated: August 31, 2026



J. Philip Calabrese
United States District Judge
Northern District of Ohio